**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHANE BURNETT,                                    Case No. 1:12-cv-366

        Plaintiff,                                    Barrett, J.
                                                  Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Shane Burnett filed this Social Security appeal in order to challenge the
Defendant's determination that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding
through counsel, Plaintiff presents four claims of error, all of which the Defendant
disputes.  As explained below, I conclude that the ALJ's finding of non-disability should
be REVERSED because it is not supported by substantial evidence in the administrative
record.

**I.  Summary of Administrative Record**

Plaintiff applied for Disability Insurance Benefits ("DIB") in September of 2007,
alleging disability due primarily to neck and back pain, with an onset date (as amended)
of December 31, 2006.   After Plaintiff's application was denied initially and upon
reconsideration, he requested a hearing *de novo* before an Administrative Law Judge
("ALJ").   An evidentiary hearing was held in November 2010, at which Plaintiff was
represented by counsel.  At the hearing, ALJ Gregory G. Kenyon heard testimony from

1

Plaintiff and an impartial vocational expert.  On December 7, 2010, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.

The record reflects that Plaintiff was 45 years old at the time of the ALJ's decision, with a high school education.  Plaintiff has been employed mostly in the construction industry.  Plaintiff's medical records present a lengthy history of back and neck pain, dating to 1990, with several surgeries along the way.  (Tr. 368).  However, Plaintiff was able to return to medium level work, and continued working until at least 2006.  He testified that he had performed some carpentry work in May through July 2007, but was unable to continue due to his pain level and because he made too many mistakes.  (Tr. 29-30).

Plaintiff lives with his wife, who became disabled after a stroke and paralyzed on her right side.  (Tr. 151).  Plaintiff represents that he takes care of his wife, since she cannot speak "more than one word," (Tr. 151) and has very limited mobility.  (Tr. 157).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar and cervical spine." (Tr. 12).   The ALJ determined that neither of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 13).  Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work, as follows:

> (1) lifting five pounds frequently and ten pounds occasionally; (2) standing/walking no more than thirty minutes at a time and for a total of four hours per day; (3) sitting for no more than thirty minutes at a time, followed by a three to four minute stand and stretch break, and for a total

of no more than four hours per day; (4) occasional crouching, crawling, stooping, kneeling, and climbing of ramps and stairs; (5) no climbing of ladders, ropes, and scaffolds; (6) no work around hazards such as unprotected heights or dangerous moving machinery; (7) occasional overhead reaching; (8) no concentrated exposure to temperature extremes or excess humidity; (9) no exposure to vibrations; 10) limited to unskilled simple, repetitive tasks.

(Tr. 13).  The ALJ found that Plaintiff would not be able to return to his past relevant work as a Maintenance Worker, because that position was skilled and required a medium level of exertion.  (Tr. 17).  Nevertheless, based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 18).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations.  (*Id.*).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred:  (1) by failing to incorporate additional reaching limitations; (2) by failing to preclude all stooping; (3) by improperly evaluating Plaintiff's credibility; and (4) by providing an improper hypothetical question to the vocational expert.  The first three errors do not merit reversal, but the last asserted error requires remand for additional review.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for either DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Failure to Include Additional Reaching Restriction**

Plaintiff argues first that the ALJ should have included an additional reaching restriction, based upon the opinion of Dr. Heindl that Plaintiff's reaching abilities were "limited," and Plaintiff's own testimony that his arms hurt after he washes dishes.  (Tr. 33, 39).  In determining Plaintiff's RFC, the ALJ found that Plaintiff could reach overhead only occasionally.  Plaintiff asserts that it was error for the ALJ to fail to include an additional restriction concerning Plaintiff's ability to reach "in front or in all directions."  (Doc. 7 at 3).

Plaintiff primarily relies upon the opinion of John E. Heindl, D.O., who has treated Plaintiff since 2007.  However, close examination of Dr. Heindl's records and opinions do not show error by the ALJ in fashioning Plaintiff's "reaching" restriction.

At Plaintiff's first visit on April 6, 2007, Dr. Heindl wrote two sentences on a prescription pad, opining that Plaintiff is "currently totally disabled due to severe OA [osteoarthritis] & disc problems in neck," with pain radiating "into the left arm."  (Tr. 279, *see also* Tr. 345-346, reporting arm pain).  In clinical records, Dr. Heindl notes that Plaintiff has numbness in his hands (Tr. 276, 348), and that Plaintiff's pain level increases with activity.  (Tr. 276).  On January 6, 2010, Dr. Heindl completed a "physical assessment of ability to do work-related activities" on Plaintiff's behalf.  On that form, he checked the "yes" box, opining that two different abilities – the ability to reach, and pushing/pulling -  were "affected" by his impairment (Tr. 380).  However, neither the form itself nor any commentary by Dr. Heindl specifies the degree to which Plaintiff's

6

reaching abilities are "affected."  In the section that queries how the referenced physical functions are affected, Dr. Heindl explains only that "pushing & pulling can cause ↑ [increased] neck pain."  (*Id.*).  In other words, the phrasing suggests a *possible* increase in pain with pushing/pulling, but fails to specify any impact in connection with "all" reaching in all directions.  An earlier opinion of Dr. Heindl reports only that Plaintiff has difficulty working with his arms "above the horizontal level," because they "start to hurt, the arms become numb, and he just has to put them down."  (Tr. 15, citing Tr. 283).  In another portion of the same form, Dr. Heindl indicates that Plaintiff could lift and carry ten pounds occasionally and five pounds frequently.  (Tr. 379).[1]

In addition to the opinions of Dr. Heindl, a state agency physician, Dr. Willa Caldwell, opined that Plaintiff could perform "frequent" overhead reaching bilaterally. (Tr. 291).  A second consulting physician, Dr. Jerry McCloud, opined that Plaintiff would be limited to "occasional" overhead reaching due specifically to his cervical disc disease.  (Tr. 299).  Last, the ALJ considered Plaintiff's own allegations that it was difficult for him to raise his arms over his head for long periods, and that extensive reaching causes pain.  (Tr. 14, Tr. 33).  Nevertheless, Plaintiff also testified that he is able to vacuum, wash dishes, clean the bathroom, clean mirrors, care for his personal needs, and mow his mother's lawn.  He cares for his disabled wife,[2] including loading and unloading the scooter she uses for mobility whenever they leave their home,

---

[1] With the exception of stooping, most of Dr. Heindl's 2010 assessment would not preclude all work.  He opined that Plaintiff can stand/walk for up to 4 hours, with one half hour at a time, and that Plaintiff can sit for the same time periods.  (Tr. 379-380).  The VE testified that the positions that he testified that Plaintiff could perform could be performed with those postural limitations.

[2] Plaintiff reported that his wife is paralyzed on her right side, cannot walk more than 100 feet, and cannot speak more than one word.  (Tr. 151, 157).

although that particular activity "wipes me out for days." (Tr. 157). During a typical day, he makes breakfast, lunch, and dinner, washes dishes, and performs other household chores. (Tr. 14).

Plaintiff argues that by including only an *overhead* reaching restriction, without additional reaching restrictions, the ALJ improperly "rejected" the Dr. Heindl's alleged opinion that Plaintiff was limited in **all** reaching. Plaintiff asserts that his limited ability to reach in front of him would preclude the unskilled sedentary jobs that the vocational expert testified that he could perform.[3]

Plaintiff's argument is not supported by the record, because Dr. Heindl's opinion simply does not specify the directionality of Plaintiff's reaching restrictions or the extent to which his reaching ability is "affected." By contrast, the ALJ's RFC determination that Plaintiff should be limited to "occasional" overhead reaching is supported by substantial evidence in the record as a whole, including Dr. Heindl's notation that Plaintiff cannot sustain work that requires holding his "arms above the horizontal level," the opinions of the two state agency physicians, and Plaintiff's own testimony concerning his reaching abilities.

### 2. Stooping Restriction

Plaintiff's second assertion of error focuses on a different RFC determination – Plaintiff's ability to stoop, which the ALJ found he could do "occasionally." Again Plaintiff relies upon Dr. Heindl's January 2010 assessment, which marked a box that Plaintiff could "never" stoop. (Tr. 380). By contrast, both Drs. Caldwell and McCloud

---

[3]Plaintiff does not articulate how the referenced jobs, including dispatcher or product clerk, would require reaching beyond his capabilities.

found that Plaintiff could "occasionally" stoop. (Tr. 290, 298). After discussing the differing opinions, the ALJ rejected Dr. Heindl's opinion on this issue and instead found that Plaintiff could occasionally stoop, consistent with the consulting physicians' opinions. "The undersigned gives most weight to the January 2010 assessment of Dr. Heindl…. However, some of the postural limitations suggested in Dr. Heindl's January 2010 assessment are slightly more restrictive than the objective evidence supports." (Tr. 15-16).

Plaintiff argues that the ALJ erred because Plaintiff's MRI and CT scan results, as well as the examination results from Dr. Heindl and Dr. Kahn, provide "objective" evidence that somehow proves that Plaintiff cannot stoop even occasionally. (Tr. 353-354, 366). However, the referenced imaging studies show only that Plaintiff has mild to moderate stenosis and evidence of degenerative disc disease in several cervical spine areas, with much milder findings in the lumbar spine areas. (Tr. 353-354, 365-366). The studies do not assess functional limitations resulting from those findings, such as Plaintiff's ability to stoop. In view of the ALJ's explanation and the record as a whole, including the RFC assessments of two consulting physicians, Plaintiff's reported activities, and the lack of any other reference (other than the single 2010 notation by Dr. Heindl) that would completely preclude the ability to stoop, the undersigned finds no error in the ALJ's conclusion that Plaintiff retains the ability to stoop "occasionally."

### 3.  Evaluation of Plaintiff's Credibility

In his third claim, Plaintiff asserts that the ALJ erred in the manner in which he evaluated Plaintiff's credibility.  Plaintiff's primary claim of disability is based upon his asserted pain level.

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of" his symptoms, including his allegations of disabling pain, "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 14).  The ALJ noted that Plaintiff's "allegations of disability are not supported by substantial objective evidence, clinical findings, or treatment history," and that Plaintiff's allegations "are disproportionate and less-than-credible."  (Tr. 17).  For example, the ALJ noted that "[a]lthough the claimant alleges some trouble using his hands due to the condition of his cervical spine, there is no evidence of nerve root compression that would support such limitations."  (Tr. 14).  The ALJ appropriately cited SSR 96-7p and considered multiple additional factors that weighed against Plaintiff's credibility.  The ALJ specifically pointed out the lack of "documented evidence of adverse side effects from treatment that would prevent him from performing competitive work activity," the inclusion of limitations to accommodate "alleged difficulties concentrating," the inconsistency of Plaintiff's activities of daily living with his complaints of disabling pain, Plaintiff's conservative treatment history, Plaintiff's ability to return to medium level work after prior back surgeries (with no further surgery), and the lack of imaging studies that would be expected to produce disabling pain.  (Tr. 17).  All of these factors, including evaluation of conservative versus more aggressive

treatment, were appropriate to consider. *See, e.g.,* 20 C.F.R. §404.1529(c)(3)(iv)-(v)(ALJ can consider medication and other treatment when assessing credibility).

As other Sixth Circuit cases have stated, "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6ᵗʰ Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A)).  In nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability.  *See Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Com'r of Soc. Sec.,* 245 F.3d 528, 536 (6ᵗʰ Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).  In addition to Plaintiff's reported daily activities in this case, the ALJ carefully considered the clinical records and objective evidence, all of which failed to support Plaintiff's allegations of disabling pain.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions

among the medical records, his testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.  In this case the ALJ considered the record as a whole, including but not limited to objective and clinical records, Plaintiff's testimony, and reported daily activities, in assessing Plaintiff's subjective reports of incapacitating pain. The ALJ's determination of credibility is within the "zone of choice" because it is supported by substantial evidence.

### 4.  Vocational Expert Errors

In his last claim, Plaintiff contends that the ALJ erred by providing an improper hypothetical question to the vocational expert, both by omitting the reaching and stooping limitations previously discussed, and by failing to account for the side effects of Plaintiff's medications.  Additionally, Plaintiff contends that the three jobs to which the VE testified were not "unskilled" jobs under the Dictionary of Occupational Titles, but instead should be viewed as "semi-skilled."   As discussed above, the ALJ's determination of Plaintiff's RFC as to Plaintiff's reaching and stooping limitations does not reveal any reversible error.

The ALJ's consideration of the side effects experienced by Plaintiff's use of prescription medications presents a closer issue.  The Defendant argues that the determination that Plaintiff is limited to "unskilled simple, repetitive tasks," (Tr. 13), accounts for any side effects experienced by Plaintiff.  The ALJ pointed to the lack of "documented evidence of adverse side effects," and reasoned that limiting Plaintiff to "unskilled simple, repetitive tasks" would adequately accommodate Plaintiff's "alleged difficulties concentrating due to side effects from pain medication."  (Tr. 17).  However,

based upon the minimal discussion and the clear need to remand for other errors in connection with the VE testimony, the ALJ will be instructed to revisit this issue.

The VE testified that Plaintiff could perform the "unskilled" jobs of dispatcher, counter sales, or general office clerk,[4] and that his testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  (Tr. 44-46). Plaintiff now asserts that there were significant discrepancies between the VE's testimony and the Dictionary of Occupational Titles. For example, "unskilled" jobs are classified as specific vocational preparation (SVP) level 1 or 2, but most of the jobs identified by the VE are "semi-skilled" at SVP level 4.  Moreover, the DOT number that the VE listed for general office clerk (which he originally identified as production clerk) is actually the DOT identification number for a microfilm document preparer.  Last, based upon additional questioning concerning the medication side effects to which Plaintiff testified, the VE stated that Plaintiff could not work any job.

As Defendant correctly points out in opposition (Doc. 9), Plaintiff's counsel had the opportunity to cross-examine the VE at the hearing, but did not then challenge the jobs identified by the VE as requiring more than an unskilled level of work.[5]  In general, when a Plaintiff believes that a conflict exists between the VE's testimony and the DOT, he is expected to present that conflict at the evidentiary hearing.

This Court is well aware that minor discrepancies, frequently discovered post-hearing, are not cause for remand.  The Sixth Circuit has held that just because a VE's testimony concerning the existence of specified jobs is contrary to the precise

---

[4]The VE originally listed the latter job as production clerk, but his testimony later altered the job description to general office clerk.

description listed in the DOT "does not establish that [the jobs] do not exist." *See Beinlich v. Com'r of Soc. Sec.*, 345 Fed. Appx. 163, 168, 2009 WL 2877930 *4 (6th Cir., Sept. 9, 2009). Discussing such minor inconsistencies, the appellate court has explained that "the DOT's job classifications are collective descriptions of 'occupations' that can encompass numerous jobs." *Lindsley v. Com'r of Soc. Sec.,* 560 F.3d 601, 605 (6th Cir. 2009). Therefore, the use of different terminology, or the fact that the VE's description of a job description does not "align perfectly with the DOT's listed occupation titles" does not require remand. *Id.*

On the unique facts presented in this case, Plaintiff's failure to alert the ALJ to all of the problems with the VE's testimony is problematic, but not fatal. When a plaintiff fails to cross-examine a VE who offers credible testimony, an ALJ has no duty to interrogate him further. *Id.* at 606; *see also Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008)(holding that an ALJ is not required to conduct his own "investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge."); *Martin v. Com'r of Soc. Sec.*, 170 Fed. App'x 369, 374-75 (6th Cir. 2006).

Here, however, the VE's testimony was so riddled with error that it cannot be viewed as containing mere "minor" discrepancies with the DOT. Instead, this record presents the rare case where the VE's testimony was so patently deficient that it cannot be considered a credible testimony, and therefore does not provide the substantial evidence required to uphold the ALJ's decision.

---

[5]Plaintiff also elected not to file a reply brief in support of his Statement of Specific Errors.

### III.  Conclusion and Recommendation

Therefore, **IT IS RECOMMENDED THAT:**

1.  The decision of the Commissioner to deny Plaintiff DIB be **REVERSED and REMANDED** under sentence four, due to over-reliance upon VE testimony that was so fraught with error, it does not provide substantial evidence for the Commissioner's decision;

2.  On remand, the ALJ should reconsider the side effects of Plaintiff's medications, and elicit new VE testimony in order to determine whether or not Plaintiff is disabled;

3.  As no further matters remain pending, this case should be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHANE BURNETT,                                      Case No. 1:12-cv-366

        Plaintiff,                              Barrett, J.
                                                    Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).